

U.S. Department of Justice

*United States Attorney  
Eastern District of New York*

RB  
F.#2010R00826

*271 Cadman Plaza East  
Brooklyn, New York 11201*

August 10, 2010

<u>By Hand Delivery</u>

The Honorable Jack B. Weinstein  
United States District Court  
Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, New York 11201

       Re:  United States v. Michael Scarpaci  
            <u>Criminal Docket No. 10 CR 480 (JBW)</u>

Dear Judge Weinstein:

      The government respectfully submits this letter to notify the Court of a potential conflict involving attorney Joseph Corozzo Jr., who represents defendant Michael Scarpaci in the above-referenced case. The conflict issues are as follows: (1) Joseph Corozzo Jr. has strong ties to the Gambino family of La Cosa Nostra (the "Gambino family"), and (2) Joseph Corozzo Jr. is the subject of multiple pending criminal investigations being conducted by the United States Attorney's Office for the Eastern District of New York.

      The government advises the Court pursuant to its obligation under Second Circuit law so the Court may conduct the appropriate inquiry pursuant to <u>United States v. Curcio</u>, 680 F.2d 881, 888-90 (2d Cir. 1982). <u>See, e.g.</u>, <u>United States v. Stantini</u>, 85 F.3d 9, 13 (2d Cir. 1996); <u>United States v. Malpiedi</u>, 62 F.3d 465, 467 (2d Cir. 1995).

<u>BACKGROUND</u>

I.   <u>Offense Conduct</u>

      The defendant Michael Scarpaci is charged in a three-count indictment with defrauding customers of Gryphon Financial. In the Southern District of New York, he is charged in a RICO conspiracy with taking part in the criminal affairs of the Gambino organized crime family of La Cosa Nostra (the "Gambino family"). <u>See</u> <u>United States v. Michael Scarpaci</u>, 09 CR 1243 (S-1) (LAK). The government does not currently have evidence that

the specific crimes charged here — defrauding Gryphon's customers — were committed in his capacity as a Gambino associate.

## II. Affiliation With Organized Crime

### A. The Defendant: Michael Scarpaci

The government possesses evidence that the defendant Michael Scarpaci is an associate in the Gambino family.

### B. The Defendant's Attorney: Joseph Corozzo Jr.

The defendant's lawyer, Joseph Corozzo Jr., is the son of Gambino family consigliere Joseph Corozzo Sr. More notably, Joseph Corozzo Jr. is as an associate of and "house counsel" to the Gambino family and is himself involved in the Gambino family's illegal activities, including the collection of extortion money, the provision of Gambino family administration funds to the incarcerated Gambino family boss, the use of his status as an attorney to further the Gambino family's illegal interests, and acts of violence or threatened violence. For his role in the Gambino family, Joseph Corozzo Jr. is currently the subject of multiple pending investigations by this Office. Set forth below are a few examples of his involvement in criminal activities that bear upon his ability to represent the defendant Michael Scarpaci.[1]

#### 1. Joseph Corozzo Jr. Counseled a Gambino Member to Perpetrate a Fraud on the Court In Order to Receive a Shorter Sentence

Former Gambino family associate and cooperating witness Anthony Ruggiano has testified that, in 1998, following his guilty plea to a RICO conspiracy in the Southern District of Florida, Joseph Corozzo Jr., who was representing his uncle, Gambino family captain Nicholas Corozzo, met with Ruggiano and other codefendants at a joint-defense meeting. Joseph Corozzo Jr. told Ruggiano that he should tell the court at sentencing

---

[1] A full recitation of the illegal activities in which Joseph Corozzo Jr. has participated is provided in the government's motion to disqualify Joseph Corozzo Jr. from representing his father in United States v. Joseph Agate, Cr. 08-76 (JBW). After receiving testimony from cooperating witness Salvatore Romano, Your Honor granted the government's motion on the ground that Joseph Corozzo Jr. had previously represented a witness who would be testifying against Joseph Corozzo Sr.

that he had a drug problem so that he would be eligible for the Federal Bureau of Prisons' drug counseling program and could receive time off his sentence if he successfully completed the program.

At the time, Joseph Corozzo Jr. was aware from conversations with Ruggiano that he did not have a drug problem and had been drug-free since the late 1980s. On the advice of Joseph Corozzo Jr., Ruggiano told the court he had a drug problem and the court recommended that he receive drug counseling. The Bureau of Prisons ultimately did not accept Ruggiano into the drug counseling program because it learned that he did not have a drug problem.

When Ruggiano testified about this conduct before Your Honor in United States v. Charles Carneglia, Cr. No. 08-0076 (JBW), in February 2009, Your Honor advised this Office to refer a portion of a transcript to the United States Attorney for possible disciplinary action.[2]

In a separate matter, Joseph Corozzo Jr. withdrew from representing a defendant before this Court in United States v. Biagioni, 07 CR 141 (CBA), when it came to light that he had similarly counseled his client in that case to take Valium in an attempt to obtain drug treatment which would have benefitted the defendant at the time of sentencing.

---

[2] Following Ruggiano's testimony, Your Honor advised:

> The clerk of the court will furnish those pages of the transcript containing the testimony of the witness with respect to what an attorney admitted in the State of New York allegedly told him with respect to drug addiction and the effect on his prison sentence. Bring it to the attention of the United States Attorney with a request that it be brought to the attention of the Committee on Ethics of the Bar Association.

T. at 1613-14. See also T. at 1830 (Court: "Mark the transcript pages 1519 to 1614, today's date, Court Exhibit 1 with respect to the testimony on direct of Mr. Ruggiano that I referred to in the record yesterday to be handed to the U.S. Attorney to use his judgment.").

4

      2.    <u>The Gambino Family Uses Joseph Corozzo Jr. to Prevent Individuals from Cooperating with Law Enforcement</u>

Joseph Corozzo Jr. is part of the Gambino family's effort to prevent individuals from cooperating with law enforcement. Joseph Corozzo Jr. has relayed messages from the Gambino family leadership to incarcerated individuals instructing them not to cooperate. In addition, Joseph Corozzo Jr. has represented a client under false pretenses to ensure that a "weak" individual who could implicate the Gambino family in criminal activity did not cooperate. Joseph Corozzo Jr. also has monitored and reported to the Gambino family administration law enforcement contacts with Gambino family members and associates in order to ensure their loyalty and keep track of the government's investigations into the enterprise.

      a.    <u>Conducting a Fraudulent Representation</u>

Former Gambino family associate and cooperating witness Salvatore Romano has testified that Joseph Corozzo Jr. fraudulently represented a defendant who could have testified against Romano in order to ensure the defendant did not cooperate. According to Romano, in approximately 1999, Vincent Minerva, one of Romano's corrupt brokers and top earners in a securities fraud scheme, was arrested. Romano viewed Minerva as "weak" and was concerned that he might cooperate with law enforcement, implicate Romano in criminal activity and expose the securities fraud conspiracy.

As a result, when Romano learned that Minerva was considering hiring Joseph Corozzo Jr., Romano secretly arranged to meet with Joseph Corozzo Jr. Romano knew that Joseph Corozzo Jr. was considered "house counsel" for the Gambino family, and that Joseph Corozzo Jr. would be loyal to Romano, and not to a client like Minerva. During Romano's meeting with Joseph Corozzo Jr., Romano explained to Joseph Corozzo Jr. how Minerva could hurt Romano and various Gambino family members and associates with whom he carried out the securities fraud. Romano and Joseph Corozzo Jr. devised a strategy — agreeing to tell Minerva that the criminal case against him was not strong — designed to convince Minerva to hire Joseph Corozzo Jr. and to not cooperate with law enforcement. Romano and Joseph Corozzo Jr. soon thereafter met with Minerva, and they were able to persuade Minerva to hire Joseph Corozzo Jr.

Romano then arranged to have Joseph Corozzo Jr. secretly meet with Romano so that Joseph Corozzo Jr. could brief

5

Romano on the status of Minerva's case, including whether the authorities were seeking to question Minerva about Romano. Romano also told Joseph Corozzo Jr. to make sure that Minerva did not cooperate and instead pled guilty. To Romano's knowledge, Minerva, in fact, never cooperated with the authorities and pled guilty in that matter.

In exchange for the assistance of Joseph Corozzo Jr. with Minerva, Romano paid Joseph Corozzo Jr. thousands of dollars and did not charge him for certain parties Mr. Corozzo held at Romano's restaurant in Staten Island, including large gatherings that cost several thousand dollars.

According to Romano, Joseph Corozzo Jr. never disclosed to Minerva — the client of Joseph Corozzo Jr. — their hidden agenda: the arrangement Joseph Corozzo Jr. made with Romano to keep Romano informed of Minerva's case and to discourage Minerva from cooperating.

When Romano testified about this conduct in a hearing held following the government's motion to disqualify Joseph Corozzo Jr. from representing his father Joseph Corozzo Sr. in United States v. Joseph Agate, Cr. 08-76 (JBW), Your Honor observed "I find [the witness is] credible based on what I know about this case, that Mr. Corozzo Jr. represented somebody at this witness' direction under circumstances that made it clear that this witness was the actual client." March 27, 2008 Transcript at 133. The Court then granted the government's motion to disqualify Joseph Corozzo Jr. from representing his father.

### b. Reporting Law Enforcement Contacts

In keeping with the role of Joseph Corozzo Jr. as "house counsel," Ruggiano has also testified that on several occasions, he contacted Joseph Corozzo Jr. to advise him that he (Ruggiano) had been approached by law enforcement. Ruggiano contacted Joseph Corozzo Jr. so that Joseph Corozzo Jr. would report this to his father, Gambino consigliere Joseph Corozzo Sr., and his uncle, Gambino captain Nicholas Corozzo, and put it "on record" that Ruggiano was approached.[3]

---

[3] Gambino family members and associates are required to report contacts with law enforcement to their superiors in order to allow the Gambino family to monitor both the allegiance of its members and associates and law enforcement activity.

In 1999, after his father passed away, Ruggiano again contacted Joseph Corozzo Jr. after federal agents approached him in prison. Prison records show that Joseph Corozzo Jr. was on Ruggiano's telephone list at the time. In the early 2000s, Ruggiano contacted Joseph Corozzo Jr. after federal agents again approached him in prison about testifying at a trial in Miami. Subsequently, in November 2005, Ruggiano contacted Mr. Corozzo after federal agents approached him once again about becoming a cooperating witness.

In each instance, Ruggiano reported to Joseph Corozzo Jr. in order to follow Gambino family procedures. His status as an attorney allowed the information to flow quickly and directly from the incarcerated Ruggiano to Joseph Corozzo and the Gambino family administration.

### c. Intimidation of Witnesses

This Office is also continuing to investigate Joseph Corozzo Jr. for witness tampering stemming from his prior representation of Theodore Persico Jr. ("Persico"), a soldier in the Colombo family of La Cosa Nostra ("Colombo family") who was charged with racketeering and extortion in United States v. Theodore Persico Jr. et al., Cr. No. 05-351 (CBA). Shortly after Persico's arrest, a private investigator contacted the extortion victim and, without debriefing the victim about the charged conduct, the investigator asked the victim to sign a prepared affidavit indicating that the none of the charged defendants had threatened him. The Office notified Joseph Corozzo Jr. that it was investigating his role in the witness tampering and moved to disqualify him. Thereafter, Joseph Corozzo Jr. withdrew from representing Persico.

### DISCUSSION

### I. Applicable Law

A criminal defendant's Sixth Amendment right to effective assistance of counsel includes the right to counsel unimpaired by conflicts of interest. See United States v. Perez, 325 F.3d 115, 124 (2d Cir. 2003). Where there is even the possibility of a conflict of interest, the trial court "must investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." United States v. Levy, 25 F.3d 146, 153 (2d Cir. 1994); see also Wood v. Georgia, 450 U.S. 261, 272-73 (1981); Cuyler v. Sullivan, 446 U.S. 335, 347 (1980); Stantini, 85 F.3d at 13. If the inquiry reveals that an attorney suffers from an actual or

potential conflict of such a serious nature that no rational defendant would knowingly and intelligently desire that attorney's representation, the Court must disqualify that attorney. See United States v. Lussier, 71 F.3d 456, 461 (2d Cir. 1995); Levy, 25 F.3d at 153.

If the conflict is such that a rational defendant could knowingly and intelligently choose to continue to be represented by the conflicted attorney, the Court must obtain directly from the defendant a valid waiver in accordance with the procedures set forth in Curcio. See, e.g., Malpiedi, 62 F.3d at 470; Levy, 25 F.3d at 153; United States v. Iorizzo, 786 F.2d 52, 58-59 (2d Cir. 1986). In summarizing the Curcio procedures, the Second Circuit has instructed the trial court to:

> (i) advise the defendant of the dangers arising from the particular conflict;
> (ii) determine through questions that are likely to be answered in narrative form whether the defendant understands those risks and freely chooses to run them; and
> (iii) give the defendant time to digest and contemplate the risks after encouraging him or her to seek advice from independent counsel.

Iorizzo, 786 F.2d at 59; see also Curcio, 680 F.2d at 888-90. By routinely relying on waivers of potential conflict claims, courts are spared from having to wade into the intricacies of those claims. See United States v. Jiang, 140 F.3d 124, 128 (2d Cir. 1998).

Notwithstanding a defendant's willingness to waive his attorney's conflict of interest, courts retain "substantial latitude" in refusing such waivers. See Wheat v. United States, 486 U.S. 153, 163 (1988) ("[W]e think the district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses."). This is so because "'[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them.'" United States v. Locascio, 6 F.3d 924, 931 (2d Cir. 1993) (quoting Wheat, 486 U.S. at 160); see also United States v. Jones, 381 F.3d 114, 119 (2d Cir. 2004) ("[D]isqualification . . . implicates not only the accused's right to counsel, but also the interests of the judiciary in

8

preserving the integrity of its processes, and the government's interest in a fair trial and a just verdict.").

II. Potential Conflicts of Interest

A. Joseph Corozzo Jr.'s Strong Ties To The Gambino Family

A defendant is entitled to counsel who is "unburdened by the ethical constraints resulting from prior representation." Iorizzo, 786 F.2d at 58. There is a presumption of prejudice where an attorney's past or present representation of another client "'[is] inherently in conflict with' a plausible line of defense or attack on the prosecution's case." Malpiedi, 62 F.3d at 469 (quoting Levy, 25 F.3d at 157). In addition, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that the legal proceedings appear fair to all who observe them." Wheat v. United States, 486 U.S. 153, 160 (1988).

Joseph Corozzo Jr.'s strong ties to the Gambino family present a potential conflict of interest in this case. Because of his strong ties to the Gambino family, it might be a conflict of interest for defense counsel to investigate leads, to introduce evidence, or to make arguments on behalf of the defendant Michael Scarpaci that might tend to incriminate or cast suspicion on other Gambino family associates. Further, as demonstrated above, Joseph Corozzo Jr. has a history of not providing independent advice concerning possible cooperation with the government.

B. Joseph Corozzo Jr. Is The Subject Of On-Going Criminal Investigations

Courts have long recognized that a defense attorney who is under investigation by the government may have a potential conflict of interest. See Armienti v. United States, 234 F.3d 820, 824 (2d Cir. 2000); United States v. Reyes-Vejerano, 276 F.3d 94, 99 (1st Cir. 2002); Thompkins v. Cohen, 965 F.2d 330, 332 (7th Cir. 1992); United States v. McLain, 823 F.2d 1457, 1463 (11th Cir. 1987); Briguglio v. United States, 675 F.2d 81, 82 (3d Cir. 1982). As the Second Circuit has explained:

> A lawyer in these circumstances, while dealing on behalf of his client with the office that is prosecuting him personally may, consciously or otherwise, seek the goodwill of the office for his own benefit. A lawyer's attempt to seek the goodwill of the prosecutor may not always be in the best

9

interest of the lawyer's client.

Armienti, 234 F.3d at 824.

Furthermore, an actual conflict, requiring disqualification of an attorney, exists when the attorney is "implicated in the crimes of his or her client since, in that event, the attorney cannot be free from fear that 'vigorous defense should lead the prosecutor or the trial judge to discover evidence of the attorney's own wrong doing.'" United States v. Gambino, 838 F. Supp. 759 (S.D.N.Y. 1993) (quoting United States v. Cortland Bay Fulton, 5 F.3d 605, 611 (2d Cir. 1993)). The conflict, however, may be waived so long as "the attorney's alleged criminal activity [is not] sufficiently related to the charged crimes to create a real possibility that the attorney's vigorous defense of his client will be compromised." Cortland Bay Fulton, 5 F.3d at 611.

The government has twice notified Mr. Corozzo that he is the subject of a criminal investigation by this Office. Specifically, this Office informed Mr. Corozzo on September 1, 2005 that he is the subject of a criminal investigation for his potential involvement in obstruction of justice and witness tampering in connection with United States v. Theodore Persico Jr. et al., Cr. No. 05-351 (CBA). In Fall 2004, this Office notified Mr. Corozzo that he is the subject of a separate criminal investigation into allegations that the Gambino family utilizes attorneys to pass instructions from incarcerated members of the Gambino family in order to maintain illegitimate family businesses, institute personnel decisions within the family, and urge other incarcerated Gambino family members and associates not to cooperate with the Government. Both of these investigations are ongoing.

In addition, as noted above, in United States v. Charles Carneglia, Cr. No. 08-0076 (JBW), Your Honor in open court advised this Office to refer a portion of a transcript to the United States Attorney for possible disciplinary action after cooperating witness Ruggiano testified that Joseph Corozzo Jr. advised him to lie to the court about his drug use to obtain admittance to a drug treatment program and thereby serve a shorter sentence.

As a result of these ongoing investigations, a serious potential conflict exists here because of the incentive Joseph Corozzo Jr. now has to "curry favor" with the government.

10

IV. <u>Proposed Questions</u>

As an initial matter, the Court should determine, in its exercise of substantial discretion, whether disqualification is warranted due to the potential conflict of interest discussed above. <u>See</u> <u>Wheat</u>, 486 U.S. at 163. Should the Court believe that the potential conflict can be waived, the government respectfully suggests that the Court obtain the defendant Michael Scarpaci's informed waiver pursuant to the following procedures: (1) the court advises the defendant of his right to representation by an attorney who has no conflict of interest, (2) the court instructs the defendant as to the dangers arising from particular conflicts, (3) the court permits the defendant to confer with his chosen counsel, (4) the court encourages the defendant to seek advice from independent counsel, (5) the court allows a reasonable time for the defendant to make a decision, and (6) the court determines whether the defendant understands the risks of representation by his present counsel and freely chooses to run them. <u>Perez</u>, 325 F.3d at 124; <u>Curcio</u>, 680 F.2d at 888-90.

The government respectfully suggests that the Court give, in substance, the following advice to the defendant Michael Scarpaci and include the following questions, at a <u>Curcio</u> hearing:

> Your attorney has represented numerous individuals alleged to be members or associates of the Gambino family of La Cosa Nostra. Based on that representation, it is possible that any advice that your attorney gives you with respect to how to proceed in this case may be influenced by his continuing duty of loyalty to his prior clients. For example, your attorney may not be able to provide you with a completely independent assessment of whether you should pursue cooperation with the government.

> I am also advised that your attorney is being investigated by the same prosecutor's office that has prosecuted you. It is possible that your attorney could make decisions about your case, consciously or unconsciously, with an eye to how such decisions might affect the government's decision whether or not to prosecute him. For example, your attorney could elect or not elect to make certain arguments, introduce certain evidence, pursue certain leads or undertake certain trial strategies that he believes will lead to a favorable result in the case against him but which

11

might lead to an unfavorable result in the case against you.

There may be other issues, in addition to the ones that I have just described, that can arise in which your attorney's ability to do certain things might be affected by the fact he has represented numerous other individuals alleged to be members and associates of the Gambino family and/or by the fact that he is being investigated by the same prosecutor's office that is prosecuting you.  No one can foresee every possible conflict of interest.

Do you have any questions about what I've just explained to you?

Can you tell me in your own words what you understand the potential conflicts of interest to be?

You have the right to be represented by an attorney who does not have any possible conflicts of interest in representing you at all stages of this case.  If you proceed with your current attorney as your attorney, you will be giving up that right.  Do you understand that?

Have you discussed these issues with your lawyer?

You also have the right to consult with an independent lawyer who can advise you about the possible conflicts of interest that might arise if you proceed with your current attorney.  Do you understand that?

You are not under any pressure to make a decision about this right now.  You are entitled, if you wish, to a reasonable period of time to think about these matters, or to consult further with your lawyer or with another lawyer before you advise the Court what you wish to do.

12

IV. <u>Conclusion</u>

As described above, the government respectfully requests that the Court conduct an inquiry into the conflict of interest present in this case, and if the Court deems the conflict waivable, the government further requests a <u>Curcio</u> hearing to determine whether the defendant is willing to give up his right to conflict-free representation.

                                        Respectfully submitted,

                                        LORETTA E. LYNCH
                                        United States Attorney

                            By:        /s/
                                        Roger Burlingame
                                        Assistant U.S. Attorney
                                        (718) 254-6422

cc:   Joseph Corozzo Jr., Esq.